FILED
2009 Feb-12 PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **LARRY D. BAKER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION: 4:07-CV-1090-RDP** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Larry D. Baker ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), appealing from the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act.

### I. Proceedings Below

Plaintiff filed his application for SSI on November 19, 2003. (Tr. 11, 50-52). Plaintiff alleged a disability onset date of December 1, 2002. (Tr. 50-52). Plaintiff's application was denied initially and he then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 29). After a June 20, 2005 hearing was cancelled, Plaintiff's case was heard by ALJ Jerome L. Munford on February 15, 2006 in Gadsden, Alabama. (Tr. 44, 246-83). In his October 20, 2006 decision, ALJ Munford found Plaintiff was not disabled according to Rules 202.11 and 202.18 of 20 CFR 404, Subpart P, Appendix 2. (Tr. 20-21). ALJ Munford found that Plaintiff had impairments such as arthralgias, empyema, emphysema, and hypertension, but that those impairments did not meet the criteria of 20 CFR 404, Subpart P, Appendix 1. (Tr. 21). The ALJ found Plaintiff retained the

residual functional capacity ("RFC") for light work. (*Id.*). Plaintiff filed an appeal from the ALJ's October 20, 2006 decision with the Social Security Administration, and that appeal was denied on April 13, 2007. (Tr. 3, 7). Plaintiff then filed a civil action in this court on June 11, 2007, which is now ripe for decision.[1] (Doc #1).

Plaintiff was born on August 20, 1955 and completed the ninth grade. (Tr. 12, 256). Plaintiff's past employment consists of working as a carpenter's helper, plumber's helper, rock mason, trash truck driver, and loading trucks at a nursery. (Tr. 64-67). Plaintiff has not performed substantial gainful activity since December 1, 2002, the alleged onset date of his disability. (Tr. 12). Plaintiff testified and documented in applications and reports that he could not perform substantial gainful activity due to lingering back pain from an injury sustained during construction work, arthritis and joint pain in his knees and hands, and most significantly, Plaintiff claims to have a lung problem which leaves him with shortness of breath. (Tr. 12, 53-57, 76-82, 91-92, 98-99, 258-63).

Plaintiff was examined by Dr. Alapati on December 7, 2002, and diagnosed with "chronic back pain most likely musculoskeletal in origin, arthritis in the hands and hypertension." (Tr. 141). Dr. Alapati stated in his functional assessment that Plaintiff was limited to standing, walking, or sitting for six hours in an eight hour work day with frequent breaks. (Tr. 145). Dr. Alapati also

---

[1]On October 30, 2006, Plaintiff filed a second application for SSI. ALJ William Lawson heard the matter on October 29, 2007. Because ALJ Lawson was aware of the previous decision issued by ALJ Munford, he limited his proceeding to the time period between October 21, 2006 to the present. ALJ Lawson determined that Plaintiff had been disabled from October 21, 2006 forward under Section 1614(a)(3)(A) of the Act. On July 11, 2008, Plaintiff filed a Motion to Supplement the Record in this court which contained ALJ Lawson's decision issued on November 13, 2007, finding in favor of Plaintiff. This court granted the Motion to Supplement the Record finding a proper purpose for it under the sixth sentence of 42 U.S.C. § 405(g). (*See* Doc. #8). Therefore, the scope of this court's review in this case is limited to the time period December 1, 2002 - October 20, 2006.

found that Plaintiff was limited to lifting or carrying twenty pounds occasionally during the work day. (*Id.*).

Plaintiff was examined by Dr. Duryea on April 8, 2003. (Tr. 139). Plaintiff reported to Dr. Duryea that he had severe joint pain for two to three weeks prior to the examination. (*Id.*). Dr. Duryea diagnosed Plaintiff with multiple arthralgias and hypertension. (*Id.*).

In November 2003, Plaintiff was seen by Dr. Echeverri, a surgeon who performed a right knee aspiration secondary to knee effusion. (Tr. 166). This procedure was performed on a mass found on Plaintiff's right knee. (Tr. 164-68). Plaintiff's pathology report showed that the mass was necrotic, but had no signs of malignancy. (Tr. 169). Dr. Echeverri reported that Plaintiff healed well from the surgery and showed no signs of infection. (Tr. 203).

On January 28, 2004, Plaintiff reported to Dr. Tenchavez that he suffered a back injury while working as a plumber. (Tr. 190). Dr. Tenchavez diagnosed Plaintiff with hypertension, history consistent with rheumatoid arthritis, a right leg mass, and nicotine dependence. (Tr. 192).

Plaintiff again saw Dr. Echeverri on April 14, 2005 for an entrapment secondary to empyema of the left lung. (Tr. 194). Dr. Echeverri wrote that Plaintiff "had a large entrapment and thickness of the pleura in the left lung. [Plaintiff] had a severe and chronic obstructive pulmonary disease, very friable lung and not expanding." (*Id.*). Dr. Echeverri also reported that the procedure did not lead to as much expansion of the left lung as the surgical team had hoped. (Tr. 195). During follow-up on June 27, 2005, Dr. Echeverri stated that Plaintiff's lung had then completely expanded, but still found some lung restrictions on the left side. (Tr. 201). Dr. Echeverri stated that Plaintiff still had severe emphysema in both lungs, much worse on the left side. (*Id.*).

At the request of the Administration, Plaintiff was examined by Dr. Harris on March 31, 2006. (Tr. 237-43). Dr. Harris determined Plaintiff had full range of motion in the neck, right shoulder, elbows, wrists, hips, knees, and ankles, but there was an abduction to ninety degrees of the left shoulder and some decreased motion in the dorsolumbar spine. (Tr. 237, 242). Dr. Harris noted that Plaintiff "carries the diagnosis of rheumatoid arthritis, although his record review reveals no evidence of positive rheumatoid arthritis test." (Tr. 237). Dr. Harris concluded his report by saying that Plaintiff was not capable of work in the work place. (Tr. 238). Dr. Harris indicated on the Physical Capacities Evaluation form that his findings were based primarily on Plaintiff's subjective complaints. (Tr. 241).

**II. ALJ Decision**

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed

in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2002. (Tr. 20). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has arthralgias, history of left lung surgery secondary to empyema, emphysema, and hypertension which are "severe" impairments as defined by the Social Security Act. (Tr. 21). Nonetheless, the ALJ determined that Plaintiff's impairments neither met nor equalled the requirements for any impairment in the Listing of Impairments, Appendix 1, Subpart P, 20 C.F.R. 404. (Tr. 20).

According to the ALJ, during the relevant period, Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 19). After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retained the RFC to perform the exertional demands of light work with the following limitations: he was able to work in a temperature controlled environment; with occasional bending, stooping, squatting, and crawling; no unrestricted heights; no driving; no excessive exposure to dust, fumes, and gases; and an option for both sitting and standing. (*Id.*). The

ALJ concluded that Plaintiff's medical condition was not of such severity that it could reasonably be expected to give rise to disabling limitations. (*Id.*). Although the ALJ found that Plaintiff was unable to perform his past relevant work, there were nonetheless a significant number of jobs in the national economy which Plaintiff could perform, all of which would have allowed Plaintiff to work with the above-mentioned limitations. (*Id.*). Thus, the ALJ ruled that Plaintiff was not disabled as that term is defined in the Act and that Plaintiff, therefore, is not entitled to a period of benefits. (Tr. 21).

**III. Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Doc #9, p. 9). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the rejection of Plaintiff's testimony regarding his subjective complaints of pain and discomfort is not supported by the substantial evidence; and (2) the ALJ rejected or otherwise gave little weight to the opinions of treating and consultative physicians. (*See* Doc #9, pp. 4-9).

**IV. Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A. The ALJ Properly Considered Plaintiff's Testimony and His Findings Are Supported by Substantial Evidence

Plaintiff's first argument is that the ALJ's conclusion that Plaintiff's subjective complaints of pain are not credible is not supported by substantial evidence. The standard for evaluating subjective claims of pain and discomfort is: "evidence of an underlying medical condition and (1)

objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Furthermore, if an ALJ refuses to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Plaintiff argues that there is no reasonable basis for the ALJ to reject Plaintiff's complaints of pain. (Doc #9, p. 6). However, in advancing this argument, Plaintiff does not address any of the reasons given by the ALJ for his determination that Plaintiff's subjective complaints were not credible. The ALJ noted that Plaintiff's allegations of disabling pain are unsupported by the evidence as a whole. (Tr. 16). After citing evidence that Plaintiff appears to take no pain medicine other than an occasional Goody's powder, the ALJ stated that it was unlikely a person who suffered from such a level of pain and discomfort would fail to seek a remedy in even over-the-counter pain medication on a regular basis. (Tr. 16, 18). The ALJ did not find Plaintiff credible regarding his decreased grip strength, which the ALJ found unsupported by the findings of Drs. Alapati, Harris, and Tenchavez. (Tr. 19).

The ALJ also questioned Plaintiff's credibility after finding discrepancies in his work history as told to the various physicians who have examined Plaintiff, in addition to his lack of reported earnings since 1981. (Tr. 18-19). Plaintiff has not addressed any of the ALJ's adverse credibility findings in his brief filed in this court.

Considering the ALJ's findings in light of the applicable standard of review, the court finds no error. The ALJ properly considered Plaintiff's history of back, lung and hand pain and the

consistent treatment he received. He weighed Plaintiff's subjective complaints and concluded that, while the medical evidence supported a finding of severe impairments, the evidence did not show that Plaintiff was disabled because of his pain. In discounting Plaintiff's subjective testimony, the ALJ relied upon substantial evidence and properly applied the law of this Circuit as articulated in *Marbury*. Accordingly, Plaintiff's first argument fails.

**B. The ALJ Properly Considered the Opinions of the Treating Physicians and the Consultative Physician and Applied the Correct Legal Standard**

Plaintiff argues that the ALJ rejected or otherwise gave little weight to the opinions of treating physicians Drs. Duryea, Echeverri, and Nelson, as well as the consultative physician Dr. Harris. Plaintiff also asserts that the ALJ misinterpreted the opinions of Dr. Alapati. Any ALJ is to consider the opinions of medical experts and weigh those opinions according to the kind of support supplied by the treating or examining physician. *See* 20 C.F.R. § 416.927(d)(3). This court finds that the ALJ properly considered all medical opinions under the appropriate legal standard.

The ALJ noted that when Plaintiff reported to Dr. Duryea in December 2001, one year prior to his alleged onset date of disability, he was no longer able to work as a guitar player because of back pain. (Tr. 128). Plaintiff reported to Dr. Duryea in April 2003 that "he usually does pretty good." (Tr. 139). Dr. Duryea encouraged Plaintiff to file for SSI because his pain had decreased his ability to work; however, the ALJ noted that Dr. Duryea did not indicate any particular limitations that interfered with Plaintiff's work abilities and her recommendation was based on Plaintiff's subjective allegations of pain. (Tr. 128).

Plaintiff asserts that Dr. Duryea's partner, Dr. Nelson, noted objective findings of impairments such as joint deformities and severe pain in June 2003, but Dr. Nelson also noted that

Plaintiff refused testing at that time. (Tr. 126). Dr. Nelson diagnosed the mass on Plaintiff's right knee and recommended surgery on the knee. (Tr. 125). An X-ray taken prior to surgery revealed mild degenerative arthritis of the right knee. (Tr. 175). Dr. Echeverri performed the surgery in November 2003 and reported in February 2004 that Plaintiff made a successful recovery and showed no signs of infection. (Tr. 167, 203).

Plaintiff testified that lung pain and shortness of breath were probably the worst of his ailments. (Tr. 261). Dr. Echeverri diagnosed left lung entrapment secondary to empyema in April 2005, and performed surgery during that month as well. (Tr. 194). During follow-up in June 2005, Dr. Echeverri noted that Plaintiff's breathing sounded clear on the left side and his lung had completely expanded, but also noted that Plaintiff had severe emphysema in both lungs. (Tr. 201). In July 2005, Dr. Echeverri noted that Plaintiff had decreased breath sounds from the left lung, but otherwise was doing well. (*Id.*). The ALJ considered the lung ailments and findings by Dr. Echeverri, but also noted that Plaintiff did not cite his lung problems in his testimony as the reason he stopped working. (Tr. 17). Rather, he cited his back pain as the reason he left his last employment. (Tr. 267). The ALJ further noted that Dr. Echeverri did not report that Plaintiff was unable to perform substantial gainful activity due to his lung surgery. (Tr. 17. 201).

Plaintiff argues that Dr. Harris held the opinion that Plaintiff was not capable of work in the workplace, and that this opinion lends credibility to Plaintiff's subjective pain allegations. (Doc #9, p. 5, Tr. 237-39). The ALJ weighed this medical opinion and chose to not give it any significant weight because Dr. Harris completed his evaluation based primarily on Plaintiff's subjective complaints, which as previously stated, the ALJ does not find credible. (Tr. 17, 241).

Finally, Plaintiff asserts that the ALJ misinterpreted Dr. Alapati's opinion when the ALJ wrote that "Dr. Alapati reported in December 2002 that the [plaintiff's] examination showed only limitation of the lumbar spine movement without evidence of paraspinal tenderness or spasm, no evidence of radiculopathy or myelopathy, and no evidence of limited range of motion of the hands." (Tr. 16). In his report, Dr. Alapati wrote,

> [Plaintiff] has had chronic back pain with radiation of pain down his legs. He also has stiffness and pain in both hand joints. His examination showed limitation of the lumbar spine movements without evidence of paraspinal tenderness or spasm. There is no evidence of radiculopathy and no evidence of myelopathy. There is no evidence of limited range of motion of the hands. There is no evidence of range of motion of congestive heart failure.

(Tr. 144). Dr. Alapati diagnosed Plaintiff with chronic back pain most likely musculoskeletal in origin, arthritis in the hands, and hypertension. (Tr. 144). Dr. Alapati further assessed that Plaintiff was limited to standing for six hours out of an eight hour workday with frequent breaks and limited to sitting for six hours out of an eight hour workday with frequent breaks. (Tr. 145). Plaintiff argues that these restrictions would provide an assessment for a sedentary work restriction for Plaintiff. (Doc. #9, p. 7). The ALJ characterized Dr. Alapati's opinion as a finding for a range of light work. (Tr. 16).

During the February 15, 2006 hearing, Vocational Expert ("VE"), Dr. Susan Heape, testified as to whether there would be any sedentary and/or light jobs available in the open market for a person with Plaintiff's restrictions if the ALJ found Plaintiff's testimony regarding disabling pain credible. (Tr. 280). Dr. Heape testified that Plaintiff could work a number of jobs in the light to sedentary categories given his RFC and past work and educational history. (Tr. 272-77, 280). The

ALJ properly relied on Dr. Heape's answers to his hypothetical questions when determining that Plaintiff could perform jobs that exist in significant numbers in the national economy.

The court concludes that the ALJ properly considered the opinions of all medical professionals involved, and weighed them according to appropriate legal standards. The ALJ did not grant deference to opinions that were based primarily on Plaintiff's subjective complaints, and not on the physician's direct examination.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this 12th day of February, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE